Filed 08/25/23  Marriage of Blum & Herbstman CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of ADAM BLUM and LAUREN HERBSTMAN. | H048887 (Santa Clara County Super. Ct. No. 2005-1-FL-129664) |
| ADAM BLUM, Appellant, v. LAUREN HERBSTMAN, Respondent. | ORDER MODIFYING OPINION TO CORRECT CLERICAL ERROR [NO CHANGE IN JUDGMENT] |

On the court's own motion (Cal. Rules of Court, rule 8.264(c)), it is ordered that the opinion filed herein on August 15, 2023, be modified as follows:

On page 1, in the first full paragraph which begins with the words "In this family law proceeding" replace "Lisa" with "Lauren."

There is no change in the judgment.

_____
Wilson, J.

_____        _____
Grover, Acting P.J.                    Danner, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of ADAM BLUM and LAUREN HERBSTMAN. | H048887 (Santa Clara County Super. Ct. No. 2005-1-FL-129664) |
| ADAM BLUM, Appellant, v. LAUREN HERBSTMAN, Respondent. | |

In this family law proceeding, Adam Blum appeals from the November 10, 2020 order (November 10 order) granting Lisa Herbstman's motion to compel responses to her request to produce certain documents related to his finances.

On appeal, Blum raises multiple claims of error, as follows:  (1) the November 10 order compels discovery in violation of a protective order issued by the Contra Costa County Superior Court in a separate proceeding; (2) the trial court lacked jurisdiction to issue the November 10 order because a prior hearing on child support arrears had resolved all issues related to the *Smith-Ostler*[1] calculations and no matters were reserved

---

[1] A *Smith-Ostler* (*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33), sometimes known as *Ostler-Smith*, "provision is 'an additional award, over and above guideline support, expressed as a fraction or percentage of any discretionary bonus actually received.'  [Citations.]  Its purpose is to capture fluctuations in the supporting (continued)

or continued; (3) the trial court lacked jurisdiction to enter the November 10 order because, at the time of the hearing on Herbstman's discovery requests, there were no motions pending regarding child support; (4) the trial court lacked jurisdiction to order discovery because all such matters were stayed due to a pending appeal; (5) even if the trial court had reserved jurisdiction over *Smith-Ostler* calculations, child support cannot be retroactively modified; (6) the trial court employed the wrong legal standard when ordering the discovery and took no evidence from the parties before issuing the November 10 order, and (7) the November 10 order was beyond the scope of Blum's original motion on child support arrears.

As we explain below, we conclude that none of Blum's arguments have merit.[2] We will affirm the order.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

Herbstman and Blum married in April 2004 and their only child was born in July of that year. They separated in December 2004, and Blum filed for divorce in October

---

[2] In her responding brief, Herbstman invites the court to consider, on its own motion, imposing sanctions against Blum pursuant to California Rules of Court, rule 8.276(a). We decline the invitation. Unspecified rule references are to the California Rules of Court.

spouse's income that are not included in a flat rate amount of support." (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949.)

[3] Herbstman requests that this court take judicial notice of this court's prior opinion in *Blum v. Herbstman* (June 13, 2022, H045460, H046286, H047513 (*Blum*) [nonpub. opn.]) on the ground that it is relevant to the issues raised in the instant appeal. Blum opposes the request, arguing that the trial court was not asked to take judicial notice of the opinion and that Herbstman has failed to show that the opinion is of "substantial consequence." We disagree with Blum and will take judicial notice of our prior opinion. (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).) As Blum acknowledges, the prior opinion, issued on June 13, 2022, did not exist at the time of the November 10, 2020 order that Blum has appealed. Herbstman cannot be faulted for failing to ask the trial court to take judicial notice of something that did not exist.

2005. "Since that time, the parties have been engaged in high conflict litigation concerning child custody and support." (*Blum*, *supra*, at p. 2.)

Following a child support trial in 2011, Blum was ordered to pay $1,441 in monthly child support to Herbstman. In January 2015, Herbstman requested an order modifying Blum's child support obligations based on claims that Blum had failed to disclose proceeds from the sale of his company during the 2011 child support trial and had otherwise misstated his finances.

Herbstman's child support modification request was tried in September 2017 and the trial court issued its final statement of decision in August 2018. In that decision, the court ordered Blum to pay Herbstman $905 in monthly child support (retroactive to the January 2015 filing of the request to modify) and ordered an annual *Ostler-Smith* payment to be paid each year by December 31. The court further ordered that "[a]ny overpayment of child support from 2015 to present shall be offset by any amount due and owing under *Smith-Ostler*." Herbstman's appeal from the August 2018 order was addressed in *Blum*, *supra*, at page 7.

In April 2019, Blum requested an order to determine child support arrears and interest (Blum's RFO) claiming that he had overpaid Herbstman $24,753 in child support from January 2015 to September 2018. On August 5, 2019, Herbstman propounded requests for production of documents (August RPD) on Blum. In the August RPD, Herbstman requested that Blum produce, among other things, documentation regarding any account with any financial institution in Blum's name from August 1, 2017, through the date of production of documents.

During the August 29, 2019 hearing on Blum's RFO, after Herbstman, appearing in propria persona, repeatedly questioned the calculation of Blum's *Smith-Ostler* arrears, the trial court assured her that her "rights to discovery are not impeded in any way. We are taking [Blum]'s admission as your starting point, and you are free to gather whatever evidence you have. You're free to conduct whatever discovery you wish and then you

3

will have the opportunity to present whatever evidence you obtain when you believe that that amount is not correct." The court later acknowledged that Herbstman disputed the amount of arrears and again informed Herbstman that she "may again conduct whatever discovery, obtain whatever evidence, and produce whatever [she] obtain[s] in an evidentiary hearing, and [the] Court retains jurisdiction over *Smith-Ostler*." In the court's order following the hearing, the judge handwrote: "This amount is without prejudice for [Herbstman] to dispute amount and conduct discovery." Herbstman appealed from this order. (*Blum*, *supra*, at p. 7.)

On October 4, 2019, Herbstman moved to compel discovery on the August RPD, arguing the requested documents were relevant to establishing the true amount of Blum's income for *Smith-Ostler* purposes. In his opposition, Blum argued that there was no basis to compel production of documents from him because there was no motion pending related to child support, and the request was nothing more than a fishing expedition. Blum also argued that Herbstman failed to establish good cause for the discovery and that her request was retaliatory.

At the November 9, 2020 hearing on Herbstman's motion to compel, neither party testified nor were any documents submitted into evidence.[4] In its November 10, 2020 written order (November 10 order) granting Herbstman's motion, the court found that the documents Herbstman had requested "pertain[] to [Blum]'s assets and finances, which is directly relevant to the reserved issue of *Smith/Ostler* arrears" and directed Blum to "serve code compliant further responses . . . , without objection, within 20 [] days."

On November 18, 2020, Blum moved to reconsider, set aside, or have a "new trial" on Herbstman's motion to compel.[5] In that motion, Blum renewed most of the

[4] No reporter was present and thus there is no transcript of the hearing.

[5] Prior to filing his opening brief, Blum filed a request to augment the record on appeal (Cal. Rules of Court, rule 8.155(a)) to include the transcript of the January 14, 2021 hearing on his motion to reconsider. By separate order dated January 14, 2022, we (continued)

4

arguments he had raised in his original opposition. He also submitted a copy of a protective order (detailed below in section II.A.1.) as an exhibit and argued that the trial court abused its discretion by ordering the parties to "violate" that order.

On January 21, 2021, the trial court issued a written order denying Blum's motion in its entirety.[6] Addressing the protective order, the court noted that it "only places restrictions on the parties' ability to obtain and use discovery in the Contra Costa County case; it does not restrict their ability to propound discovery in the family case."

Blum timely appealed.

## II. DISCUSSION

### A. *The 2017 protective order does not impact trial court's jurisdiction*

#### 1. *Additional background*

In August 2017, Blum learned that Herbstman, in a separate malpractice action against her former attorney in Contra Costa County Superior Court (*Herbstman v. Carter*, 2015, No. C-15-01104) (hereafter the malpractice action), had subpoenaed certain financial institutions seeking Blum's personal financial information. Blum applied ex parte for a protective order in the malpractice action. On October 4, 2017, the Contra Costa County Superior Court issued a stipulated protective order (the 2017 protective order) in which the parties agreed "that CONFIDENTIAL INFORMATION under this order shall pertain to all documents in the name of Adam S. Blum" and further agreed "that CONFIDENTIAL INFORMATION shall not be used in the Santa Clara County

---

deferred ruling on the request to augment for consideration with the appeal. We now grant the request to augment the record to include the transcript of the January 14, 2021 hearing.

[6] Blum does not specifically challenge this order in his briefing. The entirety of his arguments focus on the November 10 order.

5

Family Law Action, Case No. 105FL129664."[7] The 2017 protective order also provided that its provisions restricting the communication or use of confidential information "shall continue to be binding after the conclusion of this action, unless otherwise agreed or ordered."

As discussed above, Herbstman served a request for production of documents on Blum in August 2019, prior to the hearing on child support arrearages. Blum served responses to those requests on August 22, 2019 and supplemental responses on October 1, 2019, but in neither of those responses did Blum identify the 2017 protective order as a basis for withholding documents. After Herbstman moved to compel further responses to her discovery request, Blum's opposition again failed to raise the 2017 protective order as a reason why the motion should not be granted, nor did he raise it at the November 9 hearing on the motion. Blum first mentioned the 2017 protective order in his motion for reconsideration of the order compelling discovery.

### 2. Analysis

Before addressing Blum's arguments regarding the 2017 protective order, we address Herbstman's contention that Blum has waived his right to interpose the 2017 protective order. In her view, by failing to raise it as an objection in response to her discovery requests, in response to her motion to compel, or at the hearing on the motion, Blum should be deemed to have waived his claim that the 2017 protective order precludes the trial court from compelling production of financial documents. We do not agree.

The failure to raise an objection, either prior to entry of judgment *or in a motion for a new trial*, results in a waiver of the objection. (*In re Marriage of Arceneaux* (1990)

---

[7] The underlying Santa Clara County Superior Court case number for Blum and Herbstman's family law proceedings is "2005FL129664," not "105FL129664." This appears to be a scrivener's error and neither party raises it, let alone claims that it has substantive effect.

51 Cal.3d 1130, 1132-1134.) In this case, Blum did raise the 2017 protective order in his motion to set aside, or reconsider, or for a new trial. As a result, we conclude he has not waived his right to assert it as a defense.

We now turn to the merits of Blum's argument that the trial court was precluded from granting Herbstman's motion to compel due to the 2017 protective order. We reject that argument. Herbstman propounded her discovery in order to challenge the calculation of Blum's child support obligations under *Smith-Ostler*.

The California Supreme Court articulated the general rule surrounding child support stipulations and agreements in *Puckett v. Puckett* (1943) 21 Cal.2d 833, 839, as follows: "The parents may contract with each other with respect to the custody and support of their minor children. [Citations.] But inasmuch as the children's welfare is the factor of paramount concern, the children are not bound by the contract, and the law vests in the court power to provide for the custody and control of minor children. No such contract may, insofar as the children are concerned, abridge the power of the court in appropriate proceedings to provide for the support of the children by their parents or for their custody." "The court's jurisdiction over child support issues may not be restricted by the parents, and any agreement purporting to modify or divest the court's jurisdiction over child support is void as contrary to public policy." (*In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1341; *In re Marriage of Bereznak* (2003) 110 Cal.App.4th 1062, 1068-1069.)

Thus, the 2017 protective order, including the term purporting to preclude use of the information in the ongoing family law proceedings between Blum and Herbstman, cannot divest the court of its jurisdiction over matters relating to child support.

*B*. *The trial court retained jurisdiction over Smith-Ostler calculations*

Blum next contends that the trial court could not order discovery because the trial judge had not reserved jurisdiction over "any portion of [his] [m]otion to [d]etermine [*Smith-Ostler*] [a]rrears" at the August 2019 hearing nor was there any motion pending

7

related to child support. It is clear from the record that Blum is incorrect. The court, in both its comments at the August 2019 hearing and in the order following that hearing, expressly reserved jurisdiction over the calculation of *Smith-Ostler* arrears and expressly gave Herbstman permission to conduct discovery to that end.

It is hard to imagine how the trial court could have articulated itself more clearly at the August 2019 hearing. The trial court told Herbstman that her "rights to discovery are not impeded in any way," she was "free to conduct whatever discovery" she wished, *and* she would "have the opportunity to present whatever evidence" she uncovered "in an evidentiary hearing." The court concluded by stating that it "retains jurisdiction over *Smith-Ostler*." Although the court's subsequent written order does not again mention that it retained jurisdiction over *Smith-Ostler*,[8] it includes the judge's handwritten insertion that "this amount [i.e., *Smith-Ostler* arrears] is without prejudice for [Herbstman] to dispute amount and conduct discovery."

Blum points out that, during the hearing, the court referred to the Department of Child Support Services (DCSS) and its jurisdiction to enforce child support obligations. In his view, the court's written order "merely correctly relays the appropriate jurisdiction of the court versus DCSS" as to "who would determine the child support arrears and who would determine the *Smith/Ostler* arrears." We are not persuaded that the trial court's explanation of DCSS's responsibility to "determine[] and enforce[]" the child support order versus its own authority to calculate *Smith-Ostler* equates to a disclaimer of either the trial court's jurisdiction over *Smith-Ostler* or its associated authority to permit Herbstman to conduct further discovery related to that issue.

---

[8] The minute order from the hearing states: "The Court retains jurisdiction over *Smith-Ostler*." This is in direct contradiction to Blum's assertion at page 34 in his opening brief that "Nowhere in the August 29, 2019 . . . minute order does the court reserve jurisdiction."

8

We are similarly unconvinced by Blum's parsing of the handwritten notation in the August 2019 order. He contends that the court denied Herbstman's request for a continuance of the August 2019 hearing without prejudice, and that Herbstman "failed to bring a new action on the issue of arrears within the time frame permitted." His argument fails to explain the trial court's repeated explicit statements that Herbstman would be permitted to conduct further discovery related to *Smith-Ostler* calculations and could present the fruits of that discovery in an "evidentiary hearing."

Finally, we reject Blum's claim that the trial court could not have ruled on Herbstman's motion to compel because there was no pending motion regarding child support. The trial court's statements at the August 2019 hearing, as well as its handwritten notation in the ensuing order, made clear that it endorsed Herbstman's right to pursue additional discovery regarding Blum's finances for the purposes of calculating *Smith-Ostler* amounts. The trial court expressly retained jurisdiction over *Smith-Ostler*, and thus had the authority to compel Blum to provide further responses to Herbstman's discovery related to that issue.

### C. *Blum's automatic stay argument*

Blum argues that the court had no jurisdiction to act on Herbstman's motion to compel discovery because the matters were subject to an automatic stay, per Code of Civil Procedure section 916, by virtue of Herbstman's appeal in *Blum*. Specifically, Blum argues that the November 10 order is void because the court "lost subject-matter jurisdiction to decide matters pertaining to Blum's April 2019 [request for order] for arrears and the August 29, 2019 [order]." We disagree.

As set forth in the Code of Civil Procedure, and subject to enumerated exceptions, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby . . . ." (Code Civ. Proc., § 916, subd. (a).) This automatic stay "protect[s] the appellate court's jurisdiction by preserving the status quo until the appeal is decided." (*Elsea v. Saberi*

9

(1992) 4 Cal.App.4th 625, 629; accord, *Varian Medical Systems*, *Inc*. *v*. *Delfino* (2005) 35 Cal.4th 180, 189.) It "prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it." (*Elsea*, *supra*, at p. 629; *Varian*, *supra*, at p. 189.) "To accomplish this purpose, section 916, subdivision (a) stays all further trial court proceedings 'upon the matters embraced' in or 'affected' by the appeal. In determining whether a proceeding is embraced in or affected by the appeal, we must consider the appeal and its possible outcomes in relation to the proceeding and its possible results." (*Varian*, *supra*, at p. 189.)

Here, the trial court acted on Herbstman's motion to compel production of documents during the pendency of the appeal in *Blum*. In Blum's view, Herbstman's appeal from the August 29, 2019 order regarding *Smith-Ostler* arrearages (*Blum*, *supra*, p. 7) divested the trial court of jurisdiction to act on her discovery motion.

The proceedings on Herbstman's motion to compel production of documents did not involve matters that were either "embraced in or affected by" Herbstman's appeal in *Blum* and Blum offers no substantive argument to support his jurisdictional argument. At issue in that appeal was the propriety of the trial court's August 2018 order which, among other things, deemed that fees owed to court-appointed professionals were add-on child support. Blum offers no explanation as to how the trial court's ruling on Herbstman's discovery motion would have affected this court's exercise of appellate jurisdiction. Blum's obligation to respond to Herbstman's discovery requests, while related to the matter of child support, was not embraced in or affected by the question of whether the trial court erred in directing that the fees owed to court-appointed professionals qualified as add-on child support. Accordingly, the trial court had jurisdiction to address Herbstman's discovery motion and the November 10 order did not violate the automatic stay under Code of Civil Procedure section 916.

10

***D***. ***November 10 order is not a retroactive modification of child support***

Blum next claims that, even if the trial court had reserved jurisdiction over *Smith-Ostler* at the August 2019 hearing, the court's November 10 order was an abuse of discretion because "accrued child support arrears cannot be modified." We disagree.

Blum is putting the proverbial cart before the horse. The November 10 order did not address or modify Blum's child support obligations or the *Smith-Ostler* calculation in any way. While it is certainly true that child support may not be retroactively modified, as both parties agree, the November 10 order makes no such modification. If, in the future, after Blum has complied with the November 10 order and the parties are able to present relevant evidence and argument to the trial court, the court is required to follow the applicable law in deciding how to rule on any motion brought by Herbstman relating to *Smith-Ostler* calculations. In the absence of any such order, however, we will not construe the November 10 order compelling further responses as something it is not.

***E***. ***No abuse of discretion in failing to take evidence at discovery hearing***

Blum next argues that the trial court abused its discretion by failing to take evidence or live testimony at the hearing on Herbstman's motion to compel. We disagree.

There was no court reporter at the November 9 hearing, so there is no transcript for us to review. The minute order does not reflect that Blum requested an opportunity to provide evidence or live testimony. Leaving aside the fact that Blum did not seek to introduce evidence or testimony at the November 9 hearing,[9] we conclude that the trial court was under no obligation to hear testimony or evidence before ruling on Herbstman's motion.

---

[9] Blum first raised this claim of error in his motion to set aside, reconsider, or have a new trial on the November 10 order. As with his argument regarding the 2017 protective order, we find Blum's belated assertion of this argument to the trial court is sufficient to avoid waiver. (*In re Marriage of Arceneaux, supra* 51 Cal.3d at pp.1132-1134.)

Blum's citations to Family Code section 217[10] and rule 5.113(a)[11] are not particularly helpful to his cause. "While [Family Code] section 217 requires the court to receive 'relevant' testimony that is 'within the scope of the hearing' *when offered by the parties* [citation], it does not foreclose the parties from submitting evidence through other means, such as declarations, pleadings, etc." (*In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1129, italics added.) Blum makes no showing that he offered to introduce evidence or testimony in connection with the hearing on Herbstman's motion to compel. Further, he has never indicated to the lower court or this court what evidence or testimony relevant to the issue under consideration, i.e., the propriety of Herbstman's discovery requests and his bases for not responding thereto, he would offer.

Finally, we are not persuaded that either Family Code section 217 or rule 5.113(a) control in discovery proceedings. (See *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 839-840 [suggesting distinction between family law motions concerning " 'substantive relief regarding the fundamental issues in controversy' " and " 'purely procedural motions, such as those occurring in civil litigation' "]; *In re Marriage of Boblitt* (2014) 223 Cal.App.4th 1004, 1022 ["[n]o statute or rule of court exempts a

[10] Family Code section 217 provides: "(a) At a hearing on any order to show cause or notice of motion brought pursuant to this code, absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing and the court may ask questions of the parties. [¶] (b) In appropriate cases, a court may make a finding of good cause to refuse to receive live testimony and shall state its reasons for the finding on the record or in writing. . . . [¶] (c) A party seeking to present live testimony from witnesses other than the parties shall, prior to the hearing, file and serve a witness list with a brief description of the anticipated testimony. If the witness list is not served prior to the hearing, the court may, on request, grant a brief continuance and may make appropriate temporary orders pending the continued hearing."

[11] Rule 5.113(a) provides that "[u]nder Family Code section 217, at a hearing on any request for order brought under the Family Code, absent a stipulation of the parties or a finding of good cause under (b), the court must receive any live, competent, and admissible testimony that is relevant and within the scope of the hearing."

marital dissolution proceeding from the application of the Civil Discovery Act"]; Fam. Code, § 210 [unless otherwise provided by statute or rule, "rules of practice and procedure applicable to civil actions generally . . . apply to, and constitute the rules of practice and procedure in, proceedings under [the Family Code]"].)  Blum, who has the burden of showing reversible error, cites no case holding otherwise, and our research has not disclosed any.

The motion at issue here was a motion to compel discovery responses, not a motion to terminate spousal support or other matter falling squarely within the ambit of the Family Code.  As such, the motion was "brought pursuant to" Code of Civil Procedure section 2031.310, not the Family Code.  (Fam. Code, § 217.)  As a result, the trial court did not abuse its discretion in not taking evidence or hearing testimony before ruling on Herbstman's motion.

### F. *The trial court applied the correct standard in ruling on the motion to compel*

Blum's final argument is that the trial court employed an incorrect standard in ruling on Herbstman's motion to compel, failed to adequately protect his financial right to privacy, and ordered production of documents "beyond the scope" of his original motion to calculate child support arrears.  We disagree.

### 1. *Standard of review*

"We review a trial court's ruling on a motion to compel discovery for abuse of discretion.  [Citation.]  'An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice.  [Citations.]  This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law.  We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise. [Citations.]'  [Citation.] [¶] An abuse of discretion also occurs if the court applies an

13

erroneous legal standard or its factual findings are not supported by substantial evidence." (*Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 110.)

"[I]nformation, unless privileged, is discoverable if it might reasonably *lead* to admissible evidence. [Citation.] The phrase 'reasonably calculated to lead to the discovery of admissible evidence' makes it clear that the scope of discovery extends to *any information* that reasonably might lead to other evidence that would be admissible at trial. 'Thus, the scope of permissible discovery is one of *reason*, *logic and common sense*.' [Citation.] These rules are applied liberally in favor of discovery." (*Lipton v. Superior Court* (1996) 48 Cal.App.4th 1599, 1611-1612 (*Lipton*).)

"Appellate courts must keep liberal policies of discovery statutes in mind when reviewing decisions denying or granting discovery. [Citation.] Absent a showing that substantial interests will be impaired by allowing discovery, liberal policies of discovery rules will generally counsel against overturning a trial court's decision *granting* discovery [citation] and militate in favor of overturning a decision to *deny* discovery." (*Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 987.) "Courts must instead place the burden on the party asserting a privacy interest to establish its extent and the seriousness of the prospective invasion, and against that showing must weigh the countervailing interests the opposing party identifies, as *Hill* [*v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1] requires. What suffices to justify an invasion will . . . vary according to the context. Only obvious invasions of interests fundamental to personal autonomy must be supported by a compelling interest." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 557.)

### *2. Analysis*

In its ruling, the trial court, after acknowledging Herbstman's failure to "specifically address the good cause requirement [set forth in Code of Civil Procedure section 2031.310, subdivision (b)(l)] in her moving papers" nonetheless found that "[t]he information by the demand sought [*sic*] pertains to [Blum]'s assets and finances, which is

14

directly relevant to the reserved issue of *Smith/Ostler* arrears." The court also then noted that Blum "does not provide any evidence or argument to the contrary." Based on this finding, the court concluded "good cause exists for the discovery sought by the document demand."

It is difficult to see how the trial court can be said to have employed "the wrong legal standard" in ruling on Herbstman's motion to compel. Even assuming Blum had objected to her requests as violating his right to privacy in his finances, that privacy interest can be overcome where "the party seeking discovery of the information" has shown "that the information is '*directly relevant*' to a cause of action or defense, such that disclosure is 'essential to the fair resolution of the lawsuit.' " (*Look v. Penovatz* (2019) 34 Cal.App.5th 61, 73.) Here, the trial court explained how the discovery Herbstman sought, i.e., information regarding Blum's assets and finances, was "*directly relevant* to the reserved issue of *Smith/Ostler* arrears." (Italics added.) Thus, while the trial court may not have cited *Look* in its order, its analysis of the motion indicates that it understood and applied the proper standard. "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent." (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563; *In re Julian R.* (2009) 47 Cal.4th 487, 498-499.)

Furthermore, as the responding party, Blum bore the burden of justifying the objections he raised to Herbstman's discovery requests. The trial court found he had not only failed to carry that burden, but specifically noted that he made no "attempt to justify any of the objections raised [in] his discovery responses."

For much the same reason, Blum's contention that the November 10 order was "beyond the scope" of his original motion to calculate child support arrears also fails. Blum cannot credibly argue that information related to his assets and finances is not "directly relevant to the reserved issue of *Smith/Ostler* arrears." His motion to calculate child support arrears does not establish the "scope" of permissible discovery on that

15

matter.  " '[T]he scope of permissible discovery is one of *reason*, *logic and common sense*.' "  (*Lipton*, *supra*, 48 Cal.App.4th at p. 1612.)  "[Family Code] [s]ection 4053 provides that '[a] parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life,' that '[e]ach parent should pay for the support of the children according to his or her ability,' and that '[c]hildren should share in the standard of living of both parents.'  (*Id.*, subds. (a), (d) & (f).)"  (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 356.)  Given California's strong public policy in favor of child support, the trial court acted well within its discretion in determining that the documents sought by Herbstman were relevant to the question of *Smith-Ostler* arrears.

## III.  DISPOSITION

The trial court's November 10, 2020 order is affirmed.  Herbstman shall recover her costs on appeal.

16

_____
                          Wilson, J.


WE CONCUR:




_____
          Grover, Acting P.J.




_____
          Danner, J.




<u>Blum v. Herbstman</u>
H048887